**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DR. DEBRA L. WALKER and PRENTISS**                                      **PLAINTIFFS**
**WALKER, her husband,**

**VS.**                                                     **CAUSE NO.: 2:16cv42-KS-MTP**

**TARGET CORPORATION, d/b/a**
**TARGET**                                                                    **DEFENDANT**

**TARGET CORPORATION d/b/a TARGET'S BRIEF IN SUPPORT OF ITS
*DAUBERT* MOTION TO STRIKE AND/OR EXCLUDE CERTAIN OPINIONS OF
PLAINTIFFS' PROPOSED EXPERTS, LACY H. SAPP, MHS, CRC, CLCP,
AND GEORGE CARTER, PH.D.**

      **COMES NOW,** the Defendant, Target Corporation, d/b/a Target ("Target"), by and through its undersigned counsel, and pursuant to this Court's scheduling order and *Daubert v. Merrill Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, files this its brief in support of its *Daubert* motion to strike and/or exclude certain opinions of Plaintiffs' proposed expert witnesses, Lacy H. Sapp, MHS, CRC, CLCP, and George Carter, Ph.D., and in support thereof would offer the following:

**INTRODUCTION AND BACKGROUND/PROCEDURAL INFORMATION**

      This case arises out of a slip and fall in the Hattiesburg, Mississippi Target in which Plaintiff, Dr. Debra L. Walker ("Dr. Walker"), claims to have suffered injury. Plaintiffs filed the instant lawsuit, wherein they contend that Dr. Walker's slip and fall resulted from alleged negligence on the part of Target.

      Plaintiffs have identified Lacy H. Sapp, MHS, CRC, CLCP, ("Sapp") of Stokes & Associates, Inc., as an expert in this matter, to testify regarding the anticipated future medical expenses and costs as set forth in the life care plan assessment of Dr. Walker, authored by Sapp.

Plaintiffs did not identify Sapp as an expert who is anticipated to testify relative to any vocational assessment performed as to Dr. Walker and/or Dr. Walker's wage earning capacity (as Sapp did not perform any such assessment).

Sapp and her opinions should be stricken and/or limited in scope. Specifically, because Sapp performed no vocational assessment with regards to Dr. Walker, Sapp should not be allowed to offer any opinions as to Dr. Walker's ability to work in the future and/or her wage earning capacity. Furthermore, given that Sapp's opinions relative to Dr. Walker's anticipated future medical costs do not, at least in large part, pass muster under *Daubert*, her related opinions, as addressed herein, should also be stricken and/or limited.

Plaintiffs have also identified George Carter, Ph.D., as an expert economist who has provided opinions relating to past and future economic losses. Target contends, however, that Dr. Carter's testimony should be stricken or excluded. Dr. Carter's projections are based on the assumption that Dr. Walker is 100% disabled and will never be able to work again. However, neither has Dr. Walker's inability to work been established by admissible or credible evidence nor have any of Plaintiffs' medical experts in this case established, by testimony, affidavit or even within their medical records, that Dr. Walker will not be able to return to work. Therefore, Dr. Carter's opinion is based on underlying facts that do not exist, such that his opinions and anticipated testimony are speculative, at best, and are neither relevant nor helpful to the trier of fact.

For these reasons, and based on the argument below, Target moves this Court to strike and/or exclude certain opinions of Plaintiffs' proposed experts Lacy H. Sapp, MHS, CRC, CLCP and George Carter, Ph.D., and to limit each of their testimony as set forth herein.

**Plaintiffs failed to designate Sapp to provide opinions or testimony relative to Dr. Walker's wage earning capacity prior to the expert designation deadline**

The Federal Rules of Civil Procedure empower the trial judge to establish a case management schedule, and "expert witnesses must be designated in accordance with that schedule." *Rushing v. Kansas City Southern Railway Co*., 185 F.3d 496, 508 (5th Cir. 1999). A party who fails to comply with the order's deadlines "shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *Id*. A party who fails to fully comply with any case management order deadline does so at its own peril and any decision by the trial court to strike late expert witness designations and to preclude any witnesses not timely disclosed will be upheld absent an abuse of discretion. *Id*. at 509.

Rule 26(a)(2), Fed. R. Civ. P., requires expert designations to include reports, curriculums vitae, exhibits, if any, and other documents, setting forth, *inter alia*, a complete statement of all opinions the witness will express and the basis and reasons for them, as well as the facts or data considered by the witness in forming such opinions. In this case, Plaintiffs submitted a report in the form of a life care plan authored by Sapp. Plaintiffs did not, however, provide any information which would put Target on notice that Plaintiffs intend to elicit testimony from Sapp relative to any wage earning capacity claims sought to be advanced by Dr. Walker.

As illustrated above, Plaintiffs wholly failed to fully or appropriately designate any opinions by Sapp relative to any wage earning capacity claims of Dr. Walker prior to the expert designation deadline. Sapp did not include any opinions within the expert deadline relative to Dr. Walker's wage earning capacity. Having failed to fully and timely designate any such opinions pursuant to Federal Rule of Civil Procedure 26 and Uniform District Court Rule 26, and

having failed to provide a substantive report with regards to such issues pursuant to Rule 26(a)(2)(B), any opinions of Sapp, to the extent she has any, relative to Dr. Walker's claims for loss of wage earning capacity should be excluded and/or stricken as untimely.  Accordingly, Defendant would be materially prejudiced by such proposed testimony, as they have not been able to appropriately evaluate the same and respond with their own experts

Furthermore, no admissible or probative evidence exists in this case relative to whether Dr. Walker's ability to earn a living has been diminished.  Thus, any opinions premised on a loss of wage earning capacity, to include the opinions of George Carter, Ph.D., must likewise be stricken.

### Sapp's opinions as to Dr. Walker's wage earning capacity and medical costs are neither relevant nor reliable such that they do not meet the admissibility requirements of Rule 702 or pass muster under *Daubert*

Even if the Court were to excuse the fact that Plaintiff provided no information relative to any comments by Sapp regarding Dr. Walker's alleged loss of wage earning capacity claims in advance of Plaintiffs' expert designation deadline, Sapp's opinions as to Dr. Walker's ability to work in the present case should still be excluded because they are neither relevant nor reliable. For expert testimony to be admissible, it must be both relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  "Relevance is established when the expert testimony is sufficiently tied to the facts of the case that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Hubbard ex rel. Hubbard v. McDonald's Corp*., 41 So.3d 670 (Miss. 2010)(quoting *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786).  To be reliable, "the [expert's] testimony must be grounded in the methods and procedures of science, not merely a subjective belief or unsupported speculation."  *Worthy v. McNair*, 37 So.3d 609, 615 (Miss. 2010) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So.2d

31, 36 (Miss. 2003)).  Adopting the *Daubert* standard for determining reliability, the Mississippi Supreme Court held:

> The Court in *Daubert* adopted a non-exhaustive, illustrative list of reliability factors for determining the admissibility of expert witness testimony.  *Daubert*, 509 U.S. at 592-94, 113 S. Ct. 2786.  The focus of this analysis "must be solely on principles and methodology, not on the conclusions they generate."  *Id*. at 595, 113 S. Ct. 2786.  These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether the theory or technique enjoys general acceptance within a relevant scientific community.  *Id*. at 592-94; 113 S.Ct. 2786.

*McLemore*, 863 So.2d at 36-37.

**Sapp's opinions as to Dr. Walker's wage earning capacity**

In the instant case, Sapp's conclusions as set forth in her first report submitted in this case, dated November 3, 2016, are not premised on accurate data or sufficiently linked to the actual facts of this case to be deemed relevant or reliable.  Furthermore, there is no evidence in the record that Sapp consulted any literature, applied a particular theory, performed any procedures, or relied upon any established principles, methodologies, or scientific methods in rendering the opinions set forth in her report as they relate to any vocational analysis of Dr. Walker.  Accordingly, for the reasons set forth herein, Sapp should be excluded from providing expert testimony as to Dr. Walker's vocational analysis and/or her earnings capacity:

\*Sapp was not hired to perform a vocational assessment of Dr. Walker and has not done so.  Sapp was hired "to do an assessment of Dr. Walker's future medical needs."  See Ex. A, Sapp Depo at 14:16-14:17.  In deposition, Sapp continuously stated in a conclusory manner that "if [Dr. Walker] is unable to return to work, she will have a complete loss of earning capacity."  *See* Ex. B, Sapp Depo at 22:16-22:18, 22:24-22:25.  Sapp went on to testify that she had not

produced an opinion with regard to Dr. Walker's vocational capacity, including her wage earning capacity, because she was not asked to do so.  *See* Ex. C, at 24:13-24:23.  Because Sapp was neither hired nor designated as an expert in vocational analysis, and further since Sapp has not conducted a vocational assessment of Dr. Walker, any testimony she would provide would not be premised on relevant or accurate data, rendering any potential opinions both irrelevant and unreliable.

*Sapp's opinions regarding Dr. Walker's earning capacity are unreliable, because she did not form those opinions based upon generally accepted principles and methodology.  She did not, for example, review Dr. Walker's work history for the purpose of identifying the physical demands, skill levels, worker aptitudes, temperaments, and interest areas demonstrated therein.  She also did not review or reference any pertinent literature or scholarly publications.  Sapp did nothing pertinent to the issue of whether Dr. Walker can return to the workforce.  Thus, to the extent Sapp seeks to advance any opinion as to Dr. Walker's wage earning capacity, such would not be reliable and do not meet *Daubert* standards.

### Sapp's opinions as to Dr. Walker's future medical costs

Sapp has admittedly used unreliable methods when configuring her estimates as to Dr. Walker's medical costs.  For example, Sapp's opinion as to Dr. Walker's future medical costs for a spinal cord stimulator replacement was based off of one source, and that source was not located in the same  geographical area as where Dr. Walker routinely receives medical treatment:

> Q. For this whole process, the spinal cord stimulator replacement, though, where did you get your information from?
>
> A. For this cost, I was able to get information from a pain specialist in Covington, Dr. Domangue and Cypress Point, which is where the facility is in which he practices.
>
> Q. Did you check with any other facilities…

6

A.   I did.  I could not get a cost from the Hattiesburg clinic where she was treating.

Q.   Okay.

A.   And was unable to obtain costs in the Hattiesburg area in general.

\*\*\*

Q.   What about in Jackson, Mississippi, did you check that area for costs?

A.   I could've.  I don't have it documented.

\*\*\*

Q.   But you don't know because you didn't check the Jackson area?

A.   I probably did check the Jackson area.  I don't have record of every place that I've called.  I called many, many vendors to obtain costs.

Q.   Who did you call on this one?

A.   I don't have documents.  I don't keep a record of who I called.  I keep record of what costs that I obtained.

Q.   Aren't life care planners supposed to, like, **check at least three sources**?

A.   **Absolutely**.

Q.   But you don't know who you checked?

A.   **I was unable to get three sources.**

\*\*\*

Q.   And so it looks like, this is with specific regard to the [Spinal Cord Stimulator] replacement, it looks like Shelby from your office called – is it Dr. Domangue?

A.   Dr. Domangue, Chad Domangue.  . . .

Q.   But there is no one else on here.

A.   No.  **That was the only vendor that I could obtain a cost from for a full procedure.**

*See* Ex. D, Depo of Lacy Sapp, at 76:11-78:13 (**emphasis added**).  So, Sapp's method for estimating Dr. Walker's future medical costs for the dorsal spinal cord stimulator replacement, the most expensive item on Sapp's list, was admittedly flawed.  While Sapp was supposed to, both by her regulatory commission's standards and her personal standards, review three sources, Sapp only used one source before publishing her expert report.  *See* Ex. D, Depo of Lacy Sapp, at 78:9-78:13, 79:12-79:13.

   Furthermore, the future medical specials as set forth in the Life Care Plan as identified by Dr. Lambert should be stricken, as the questionnaire on which Dr. Lambert included his anticipated future medical treatment was not part and parcel of his medical records but was instead a separate document generated strictly for this litigation.  Because the questionnaire was not produced by Plaintiffs, any opinions of Sapp premised thereon should be stricken.  Furthermore, Sapp admitted during her testimony that there were some ambiguous and confusing responses within Dr. Lambert's questionnaire, but admittedly did not follow-up with Dr. Lambert to clarify his responses, despite the fact that some of the confusion surrounds whether Dr. Lambert's opinions were given to a reasonable degree of medical certainty.  *See* Ex. E, Depo of Sapp, at 33:1-42:10.   Given this, the entire questionnaire should be deemed unreliable and confusing, such that it should be stricken and any references in Sapp's Life Care Plan based on Dr. Lambert's responses to the questionnaire should also be stricken.  Notably, it was not until Lacy Sapp's deposition, which was taken on April 13, 2017, well beyond Plaintiffs' expert designation deadline and the discovery deadline, that the questionnaire of Dr. Lambert was produced.  In sum, given the ambiguities surrounding Dr. Lambert's questionnaire responses, and the fact that he does not identify with any specificity what medical care will be required in the future within his medical records or by Rule 26(b) report, any opinions of Lacy Sapp, to

include the inclusion of any items in the Life Care Plan, premised on the questionnaire should be excluded.

In a similar vein, the medical records of Todd Sitzman, M.D., do not reflect what future medical care will be required or whether the past medical care was causally-related to the subject incident. Nowhere within Dr. Sitzman's medical records or notes does he recommend a spine stimulator, replacement of the spine stimulator, or radiofrequency ablation. For that matter, no physician has established that the placement of the dorsal column stimulator or the need for radiofrequency ablation was caused by the subject incident at Target. Instead, Sapp relies on the questionnaire submitted to Dr. Sitzman to opine as to the necessity of future medical needs such as the ones identified herein. Interestingly, within the questionnaire, and with regards to the spine stimulator and the radiofrequency ablation, Sapp included those as "examples" for consideration by Dr. Sitzman. As life care planners are not supposed to propose medical treatment but are instead limited to taking proposed courses of treatment from treating physicians and determining costs. Therefore, for these reasons, any costs predicated on Dr. Sitzman's questionnaire as pertaining to the placement of the spine stimulator, any replacement costs in the future or battery replacement, and any radiofrequency ablation should be stricken from the life care plan.

"While no specific language, such as "with a reasonable degree of scientific certainty," is required, an expert witness must still form his or her opinion with scientific certainty." *Illinois Cent. R. Co. v. Young*, 120 So. 3d 992, 1007 (Miss. Ct. App. 2012) (quotations omitted). "The expert's opinion cannot be mere speculation." *Id.* (quotations omitted).

Here, Sapp's opinions as many of Dr. Walker's future medical costs do not conform with the accepted standards promulgated by the Commission on Health Care Certification. Since

9

Sapp only used one source to obtain an estimate on certain medical costs, and failed to obtain costs from the area in which Dr. Walker routinely seeks medical treatment, she did not meet the applicable standards for life care planners, and did not form her opinion "with scientific certainty." *See Illinois Central*, 120 So. 3d at 1007. The uncertainty relative to the questionnaires Sapp provided to some of Dr. Walker's treating physicians further calls into question the validity of Sapp's life care plan and the anticipated costs set forth therein. Thus, Sapp's opinions are at best tainted and at worst, mere speculation. Since Sapp did not form her opinion as to Dr. Walker's future medical costs, at least with regards to the dorsal column stimulator and radiofrequency ablation, with scientific certainty, her opinions are not reliable and inadmissible under Rule 702.

### Dr. Carter's opinions as to Dr. Walker's future economic losses lack any foundation, rendering them both irrelevant and unreliable, and, therefore, inadmissible under Rule 702

Dr. Carter's opinions as to Dr. Walker's future economic losses should be excluded, because they are neither relevant nor reliable. For expert testimony to be admissible, it must be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "Relevance is established when the expert testimony is sufficiently tied to the facts of the case that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Hubbard ex rel. Hubbard v. McDonald's Corp*., 41 So.3d 670 (Miss. 2010)(quoting *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786). To be reliable, "the [expert's] testimony must be grounded in the methods and procedures of science, not merely a subjective belief or unsupported speculation." *Worthy v. McNair*, 37 So.3d 609, 615 (Miss. 2010) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So.2d 31, 36 (Miss. 2003)). Adopting the *Daubert* standard for determining reliability, the Mississippi Supreme Court held:

> The Court in *Daubert* adopted a non-exhaustive, illustrative list of reliability factors for determining the admissibility of expert witness testimony. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. 2786. The focus of this analysis "must be solely on principles and methodology, not on the conclusions they generate." *Id*. at 595, 113 S. Ct. 2786. These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether the theory or technique enjoys general acceptance within a relevant scientific community. *Id*. at 592-94; 113 S.Ct. 2786.

*McLemore*, 863 So.2d at 36-37.

Dr. Carter's opinions and calculations all operate off of an erroneous assumption: That Dr. Walker will not be able to work again. In fact, the fourth page of Dr. Carter's opinion contains the following disclaimer:

> BASIC ASSUMPTION: But for the accident, Dr. Walker would have worked as a nurse/administrator, or in a similar occupation, until end of work life expectancy. She would have maintained a household with her spouse for her life expectancy. She would have worked a typical work life expectancy and lived a typical life expectancy.

*See* Ex. F, Report of George Carter, at 4. However, no physician has testified that Dr. Walker will not be able to work. Nor do any of Dr. Walker's admissible medical records contain any reference to whether Dr. Walker will be able to work again. So, Dr. Carter's "BASIC ASSUMPTION" is wrong. Therefore, all of Dr. Carter's opinions in his report that pertain to future economic losses are fundamentally unsupported, as Dr. Walker will be able to work again.

As a general rule,

> [Q]uestions relating to bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. In some cases, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict.

11

*Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (internal citations omitted). If fundamentally unsupported, "then it offers no expert assistance to the jury." *Id.* "Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible under Fed. R. Evid. 403." *Id.* (citation omitted).

In the Fifth Circuit, the district court may reject the proffered opinion of an expert witness if it is fundamentally unsupported. *Equitable Mortg. Corp. v. Mortgage Guar. Ins. Corp.*, 791 F. Supp. 620, 626 (S.D. Miss. 1990) (citing *Viterbo*)). In *Equitable Mortgage*, the District Court excluded an expert's opinion, because the opinion, on its face, based only upon one of many factors pertinent to the particular question at issue. *Id.* Since the expert completely disregarded all of the other factors, the District Court held that the expert's opinion was fundamentally unsupported. *Id.*

Since the Court may reject the proffered opinion of an expert witness if it is fundamentally unsupported, the opinions of Dr. Carter as to Dr. Walker's future economic losses must be rejected. As Dr. Carter made it very clear that his opinions were based off of the assumption that Dr. Walker would never be able to work again,[1] his opinions are completely unsupported as it has not been established, nor even mentioned, that Dr. Walker will never be able to work again. Dr. Carter clearly based his opinions on the assumption that Dr. Walker would never work again and completely ignored the possibility of a potentially working Dr. Walker, even if only at varying percentages of disability. Since Dr. Carter's opinions are solely based on a falsity, then his opinions offer no expert assistance to the jury. *See Viterbo*, 826 F.2d at 426. Therefore, Dr. Carter's opinions as to Dr. Walker's future economic losses should be excluded, as their lack of foundation renders them completely unreliable and unhelpful to the

---

[1] *See* Ex. F, Report of George Carter, at 2 (*emphasis added*):

trier of fact.

## CONCLUSION

Plaintiffs did not provide a sufficient designation of Sapp for her to opine as to Dr. Walker's loss of wage earning capacity claims.  Furthermore, neither the opinions of Sapp nor Dr. Carter pass muster under *Daubert*.  For these reasons, the instant motion should be granted.

**RESPECTFULLY SUBMITTED**, this the 20th day of April, 2017.

>                           **TARGET CORPORATION**
>                           **Defendant**
>
> BY:     */s/ John S. Graham*
>             MONTE L. BARTON, JR.
>             JOHN S. GRAHAM

OF COUNSEL:

Monte L. Barton Jr. (MSB #2095)
John S. Graham (MSB #100364)
**JERNIGAN, COPELAND & ANDERSON, PLLC**
587 Highland Colony Parkway
Post Office Box 2598
Ridgeland, MS 39158-2598
Telephone: (601) 427-0048
Facsimile: (601) 427-0051
Email: mlbarton@jcalawfirm.com
         jgraham@jcalawfirm.com

## CERTIFICATE OF SERVICE

I, the undersigned, attorney of record for Defendant, Target Corporation, do hereby certify that I have this day served, via ECF filing system, a true and correct copy of the above and foregoing document to the following counsel of record:

K. Douglas Lee (MSB # 9887)
Lee Law Firm, LLC
628 Churchwell Road
Hattiesburg, MS 39401
Telephone: (601) 583-4447
Facsimile: (601) 450-0152
Email: doug@leelaw.us
Email: doug.lee@leelaw.us
ATTORNEY FOR PLAINTIFF

TIMOTHY M. FARRIS (MSB #8848)
Law Office of Timothy M. Farris, PLLC
6645 Highway 98 Suite 3
Hattiesburg, Mississippi 39402
Telephone (601) 296-1 082
Facsimile (601) 296-1085
Email: tim@timfarrislaw.com
CO-COUNSEL FOR PLAINTIFF

**THIS**, the 20th day of April, 2017.

         */s/ John S. Graham*
         MONTE L. BARTON, JR.
         JOHN S. GRAHAM

14