# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**DR. DEBRA L. WALKER,** *et al.*                              **PLAINTIFFS**

**V.**                              **CIVIL ACTION NO. 2:16-CV-42-KS-MTP**

**TARGET CORPORATION**                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This is a slip-and-fall case. Plaintiff Debra Walker alleges that she slipped on a puddle of water in Defendant's store in Hattiesburg, Mississippi, and injured herself. She designated Chris Herring, an HVAC technician, as an expert in "refrigeration and environmental systems, the formation of water related to the operation of those systems, and safety procedures employed at retail stores due to known hazards relating to the operation of those systems." Exhibit 3 to Response at 6, *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP (S.D. Miss. May 18, 2017), ECF No. 111-3. Defendant filed a Motion to Exclude [83] Herring's proposed expert testimony, arguing that he was not qualified to testify as an expert in the fields for which he was designated, and that his testimony is unreliable.

For the reasons provided below, the Court **grants** Defendant's Motion [83] and excludes the proposed expert testimony of Chris Herring. Specifically, the Court finds that Herring's proposed expert testimony regarding "the formation of water related to the operation" of "refrigeration and environmental systems" is unreliable. The Court also finds that Plaintiff has not met her burden of proving that Herring is qualified to provide expert testimony as to "safety procedures employed at retail stores."

A.  *Rule 702*

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Id.* at 989 (punctuation omitted).

Not every guidepost outlined in *Daubert* will necessarily apply to expert

testimony based on engineering principles and practical experience, but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009) (alteration original). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

The Court's rule as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. While the Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate," *Daubert*, 509 U.S. at 595, 113 S. Ct. 2786, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the

expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified as an expert, that the testimony is reliable, and that it is relevant to a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

## B.   *Testimony Regarding Source of Water*

Plaintiff contends that the puddle of water on which she slipped was caused by condensation dripping from a metal cart loaded with boxes of refrigerated yogurt. The primary focus of Defendant's motion is Herring's opinion that "the water on the floor in which [Plaintiff] slipped . . . came from condensation that formed . . . on the metal cart and product [in] that aisle." Exhibit A to Motion to Exclude at 2, *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP (S.D. Miss. Apr. 20, 2017), ECF No. 83-1. Herring also intends to testify that "the water accumulated on the cart and floor at such a rate that it would have been visible to any Target employees who were inspecting the area or working on that aisle for three to fifteen minutes before [Plaintiff] fell." *Id.* Among other things, Defendant argues that Herring's opinions on these matters are unreliable. Based on the record before it, the Court agrees. Herring's opinion on this subject suffers from two major problems: a lack of supporting data, and a lack of discernable methodology.

### 1.   *Insufficient Facts*

In Herring's report, he represented that "[a]ll facts or data considered in forming

4

my opinions are included" therein. Exhibit A [83-1], at 1. But his report provides few actual facts, and his opinions were based on numerous unsupported assumptions.

Herring assumed that both the cart and the yogurt – as opposed to just the yogurt – were refrigerated before they were brought out to restock the shelves. *Id.* at 3. His report included two different assumptions regarding the temperature of the cart and yogurt, despite noting that "Target has not disclosed the temperature of its back areas coolers . . . ." *Id.* First, he assumed that they were refrigerated "at or below 40 degrees F." *Id.* Later, he asserted that "the most reasonable and conservative estimate for the temperature of the boxes of yogurt and of the . . . cart . . . is no more than 34 degrees at the time it left the cooler and was brought onto the aisle . . . ." *Id.* He also assumed that the cart full of yogurt was immediately brought from the cooler to the aisle, rather than sitting outside the cooler for some time before being brought to the aisle. *Id.*

Herring also failed to provide key data underlying his analysis. He stated: "Based on the temperature and humidity information in that space (i.e., in the 'P Fresh' area of the store where [Plaintiff] fell), as provided . . . by Target, dew points would have been as high as 54 degrees F, as low as 50 degrees F." *Id.* But he did not provide the temperature and humidity data in his report, despite explicitly representing that "[a]ll facts or data considered in forming [his] opinions are included . . . ." *Id.* at 1.

Herring concluded: "Based on my review of the evidence, . . . it is quite reasonable to expect for a cart loaded with boxes of yogurt to 'sweat' enough water to

5

form a puddle on the floor the size described in the incident report." *Id*. at 4. But the only hard evidence Herring included in his report is the fact that refrigerated yogurt was loaded on a metal cart and brought to the aisle. He did not specifically state that the metal cart itself was refrigerated, and he admitted that he does not know the temperature at which the yogurt was refrigerated. He also does not know how much time elapsed, if any, between removal of the yogurt from the coolers in the back of the store and placement of the cart in the aisle. His report does not provide the total surface area of the yogurt boxes and cart, *i.e.*, the total surface area on which condensation could form. Finally, although he claims that Target provided hard data related to the temperature and humidity in the building, he did not provide it in his report.

Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation – i.e., good grounds, based on what is known." *Daubert*, 509 U.S. at 590 (punctuation omitted). Therefore, "[w]here an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz*, 555 F.3d at 388; *see also Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013); *Seaman*, 326 F. App'x at 725. "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all instances mandatory." *Moore*, 547 F. App'x at 515. Based on the current record, the Court concludes that Herring's opinions

6

regarding the origin of the puddle of water are not supported by sufficient data.[1]

   2.   *Insufficient Methodology*

In addition to these missing facts, Herring's report does not include any explanation of his methodology or analysis at key points in his report. First, he claims that the "dew points [in the store] would have been as high as 54 degrees F, and as low as 50 degrees F," based on the temperature and relative humidity data. *Id.* at 3. But he failed to "show his math" and explain how one generally calculates dew point, much less how one does so in these specific circumstances – i.e., in the immediate vicinity of a metal cart full of refrigerated yogurt next to open coolers in this specific facility with the specific temperature and humidity data allegedly provided by Target. His analysis

---

[1] *See Paz*, 555 F.3d at 389 (where proposed expert's "diagnosis was fundamentally based on insufficient information," her opinion was unreliable); *Hathaway v. Bazany*, 507 F.3d 312, 318-319 (5th Cir. 2007) (where proposed expert relied on unsupported conjectures, failed to provide any specific factual support for his initial assumptions or analysis, and failed to provide his methodology, the district court was well within its discretion to exclude his testimony); *Moore*, 547 F. App'x at 516-17 (where proposed expert "made numerous assumptions with no apparent underlying rationale" and based opinions on insufficient evidence, district court did not abuse its discretion in barring his testimony); *Bryant v. 3M Co.*, 78 F. Supp. 3d 626, 633 (S.D. Miss. 2015) (proposed expert's testimony was not supported by sufficient information and, therefore, unreliable); *Corinthian Court Holdings, LLC v. State Farm Fire & Cas. Co.*, No. 2:16-CV-18-KS-MTP, 2017 U.S. Dist. LEXIS 53100, at *9 (S.D. Miss. Apr. 6, 2017) (where proponent of expert testimony did not provide the factual basis and methodologies underlying expert testimony, motion to exclude testimony was granted); *O'Hara v. Travelers*, No. 2:11-CV-208-KS-MTP, 2012 U.S. Dist. LEXIS 104048, at *24-*25 (S.D. Miss. July 26, 2012) (where proposed construction expert viewed fire loss years after it occurred and did not view the inside of the dwelling, and only considered three photographs provided by proponent party, his testimony as to the cost to repair home was not reliable); *Walters v. Holder*, No. 2:10-CV-76-KS-MTP, 2012 U.S. Dist. LEXIS 119328, at *20-*22 (S.D. Miss. Aug. 23, 2012) (where proposed expert's testimony was unsupported by any specific facts, it was unreliable).

7

moves from an assumed yogurt temperature of "no more than 34 degrees F," to unprovided "temperature and humidity information," and on to a result of "dew points . . . as high as 54 degrees F, and as low as 50 degrees F." *Id.* The only explanation he provided as to how he reached this conclusion was that he "used a Trane psychrometric chart to determine the dew point in the pertinent area." *Id.* at 2. But he did not include the chart in his report or explain its use or significance.

The same problem underlies his opinion that "a puddle the size described in the incident report could have formed in three to fifteen minutes . . . ." *Id.* at 4. Rather than explain the process utilized to reach his conclusion, Herring simply declared: "Based on my review of the evidence, my knowledge, training and experience, it is quite reasonable to expect for a cart loaded with boxes of yogurt to 'sweat' enough water to form a puddle on the floor the size described in the incident report . . . in three to fifteen minutes . . . ." *Id.* Again, Herring did not "show his math." He provided no data to support this opinion, and he did not explain what he did with the data to reach this conclusion.

In response to Defendant's motion, Plaintiff filed an affidavit from Herring. Exhibit 1 to Response, *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP (S.D. Miss. May 18, 2017), ECF No. 110-1. Therein, Herring claims that he "used reliable methods and industry standards in making [his] calculations," but – once again – he did not provide those methods or industry standards or the calculations he allegedly performed. *Id.* at 3. He referred to a "psychometric chart," but he did not attach it to the affidavit or explain its use or significance. *Id.*

8

In summary, Herring's report contains no hard data or calculations to support any of his opinions regarding condensation and the formation of the puddle. While the calculations may involve multiple environmental factors, these questions are rooted in relatively basic principles of thermodynamics. But Herring explained nothing. He made a few assumptions, referred to data that he did not provide in his report, and declared his conclusion without any supporting data or methodology. Based on what is currently before the Court, Herring's opinion is based on nothing more than his own "*ipse dixit*," and "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. Accordingly, the Court concludes that Herring's opinions regarding the origin of the puddle are unreliable and, therefore, not admissible under Rule 702.[2]

## C. *Testimony Regarding Safety Measures*

Defendant argues that Herring is unqualified to provide any opinions regarding "safety procedures employed at retail stores . . . ." Exhibit 3 [111-3], at 3. "Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial

---

[2]*See Joiner*, 522 U.S. at 146-47 (district court did not abuse discretion in barring expert testimony where proposed expert's methods did not support his conclusions); *Hathaway*, 507 F.3d at 318 (where proposed expert's opinion was "not based on any discernable training in or use of a scientific methodology," trial court was within its discretion to exclude his testimony); *21st Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*, No. 1:10-CV-214-HSO-JMR, 2011 U.S. Dist. LEXIS 160514, at *14 (S.D. Miss. July 12, 2011) (proposed expert articulated no methodology, "only impermissible conclusory statements); *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06-CV-489-HSO-RHW, 2008 U.S. Dist. LEXIS 111976, at *2-*3 (S.D. Miss. May 23, 2008) (where there was an "admitted absence of any engineering calculations and/or tests performed" by proposed expert, his opinion was unreliable).

judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992). The proponent of expert testimony must establish the expert's qualifications by a preponderance of the evidence. *United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997).

Rule 702 provides that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *Moore*, 997 F.2d at 57. Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). A proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). But regardless of its source, "the witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013). "[Q]ualification to testify as an expert . . . requires that the area of the witness's competence matches the subject matter of the witness's testimony." 29 Charles Alan Wright, Arthur R. Miller, & Victor James Gold, Federal Practice and Procedure § 6265 (1st ed. 2014).

Herring offered numerous opinions regarding the alleged hazard posed by

condensation from the cart full of yogurt and safety measures that Defendant did not employ. He stated: "In my experience, product or racks taken out of a refrigerated cases can very quickly begin dripping water onto the floor, and it is imperative that safety precautions be taken to keep shoppers away from the danger this poses." Exhibit A [83-1], at 3. He also contends that "water condensing on cold material taken from cooler units is a known hazard to anyone who may walk in that area," and that Defendant "should have . . . put warning signs out to warn customers and other employees of the danger of a wet floor." *Id.* Finally, he opines that Defendant's employees "should have seen" the puddle of water "and removed it . . . ." *Id.*

Defendant argues that Herring is unqualified to provide any of these opinions because he is not qualified as an expert in "safety procedures employed at retail stores . . . ." Exhibit 3 [111-3], at 3. Plaintiff did not respond to this argument in briefing. The proponent of expert testimony has the burden of establishing the expert's qualifications by a preponderance of the evidence. *Griffith*, 118 F.3d at 322. Because Plaintiff made no attempt to meet this burden, the Court finds that Herring is not qualified to provide expert testimony on any matters regarding "safety procedures employed at retail stores . . . ." Exhibit 3 [111-3], at 3.[3]

## D.  *Conclusion*

---

[3]The Court also notes that jurors in this district are quite aware, "using only their common experience and knowledge," that condensation forms on cold objects. *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). Therefore, the Court questions whether Herring's retail safety opinions would actually help the jury. *Id.* (expert testimony unnecessary where jury could assess situation using their own knowledge and experience).

For the reasons provided above, the Court **grants** Defendant's Motion to Exclude [83] the testimony of Plaintiff's proposed expert, Chris Herring.

SO ORDERED AND ADJUDGED, on this, the __14th__ day of June, 2017.

　s/Keith Starrett　　　　　　　  
UNITED STATES DISTRICT JUDGE